UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TANISHIA TREADWELL

    Plaintiff,

    v.                                      CAUSE NO. 3:24-CV-226 DRL-SJF

WALKERTON POLICE DEPARTMENT,

    Defendant.

OPINION AND ORDER

Tanishia Treadwell, proceeding *pro se*, filed this case in state court on February 7, 2024. She subsequently filed three supplements to her complaint, though she cannot amend in part. The Walkerton Police Department timely removed the case. She alleges, as best the court can tell, that the WPD violated her (and her son's) Fourth and Fourteenth Amendment rights. On April 10, 2024, the WPD moved to dismiss her complaint under Federal Rule of Civil Procedure 12(b)(6). The court ordered Ms. Treadwell to respond by May 1, 2024. She didn't, though she filed other things. Today, the court grants the motion to dismiss.

STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating

whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

BACKGROUND

Interpreting Ms. Treadwell's complaint liberally, the following facts emerge for today's purposes. On February 6, 2024, WPD officers arrived at Ms. Treadwell's home to search for a firearm that was allegedly brandished during a road rage incident in which she was a suspect. WPD officers arrived with two warrants: one to search Ms. Treadwell's vehicle, and another to search her house. The two search warrants were issued based on photo lineup identifications—made with "no hesitation" by the two people who reported the road rage incident.

Ms. Treadwell says she complied with officers during the searches. During the search of her home, she handed a fanny pack to officers, where officers discovered a black handgun. Officers then asked if Ms. Treadwell would be willing to make a statement. She replied yes and was invited to WPD. After being interviewed, she gave officers consent to search the two cellphones that were in her possession so that officers could obtain GPS location and any other data relevant to the road rage investigation. According to officers, they then took the two cellphones and prepared to transfer them for forensic analysis. Later that day, Ms. Treadwell withdrew her consent; officers subsequently sought and obtained a search warrant for information and data pertinent to their investigation of the road rage incident. Ms. Treadwell says her cellphones were taken despite not being part of the two warrants.

Ms. Treadwell also sues the WPD because of a similar incident involving her son that occurred on March 1, 2023. Her son encountered a driver who brandished a gun. Her son feared for his safety, sped away, and went home, because (as she says) "legally a person has the right to not pull over when being pursued until they are in a comfortable [and] safe location." After he got home, officers arrived, and her son was charged with fleeing and eluding. According to Ms. Treadwell, the police were never

2

behind her son; and, to the extent that an officer was behind him, the officer was informed not to pursue him based on that officer's familiarity with Ms. Treadwell and her son's residency.

Her son spent a night in jail for this incident. After picking him up, Ms. Treadwell and her son searched around town for the vehicle that contained the passenger who brandished the gun. It appears that they located the vehicle, as Ms. Treadwell says no report has been made against the car's owner or other members of their household. She alleges the WPD failed to assemble a photo lineup before charging her son. She says the WPD discriminated against her son and failed to allow him to exercise his constitutional right to wait to pull over until in a safe location. These two incidents, to her, demonstrate discrimination of their "rights as citizens" because the WPD did not act this way with white residents in Walkerton.

Next, Ms. Treadwell states that "Kulp" (who in the probable cause affidavit is identified as an Assistant Chief with the WPD) is allowing her next-door neighbor, Jordan Stull, to file reports against her, knowing that the neighbor is racist and harasses her "every other hour." Ms. Treadwell says Mr. Stull has damaged her vinyl siding, called her names and racial slurs, and taken her dog into his home. In a supplement to her complaint, Ms. Treadwell asserts that the Assistant Chief threatened that he was going to have her locked up for harassment. According to Ms. Treadwell, Walkerton is a "very racist town," and nothing is done to remedy what is done to her and her family.

Ms. Treadwell also says "Officer Christie" is "a racist" who has harassed, threatened, and intimidated her while she has lived in Walkerton. In one incident, she describes being called "all types of stupid b******" and a "dumb a**" as she dropped her son off at elementary school because she didn't know the rules regarding vehicle drop offs. In another undated incident, Ms. Treadwell reported her son as a runaway to Officer Christie after her son was gone from home for a few days. While on patrol, Officer Christie saw her son sitting on Ms. Treadwell's porch sweating because it was a hot day. Ms. Treadwell then received a call from dispatch telling her that she needed to come pick her son

up from the station, because the officers "aren't her babysitter." At the station, Officer Christie immediately began intimidating her and threatening to lock her up, all because she had reported her son missing and he was found sweating, as Officer Christie insinuated that she had negligently left her son outside in the heat. Ms. Treadwell says Officer Christie, Assistant Chief Kulp, and "Andrew," seemingly another WPD officer, should not be allowed to work as officers or collect pension benefits "because they work unethically" toward African-Americans.

In another supplement to her complaint, Ms. Treadwell alleges harassment by the WPD when police officers came to her home to do a well-being check on her father, who is on hospice care. Finally, Ms. Treadwell states that officers are "always pulling [her] over stating [she's] speeding when [she's] not." Ms. Treadwell asserts a claim for $500,000.

## DISCUSSION

A. *Claims against the Walkerton Police Department.*

Ms. Treadwell alleges violations of her (and her son's) constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, she must show that she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

The WPD moves to dismiss the complaint, in part, because they are not a suable entity. They are right. Though "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted), even under relaxed pleading standards a plaintiff can only proceed against a suable entity.

Local government liability depends on state law. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997). In Indiana, a municipal police department, such as the WPD, is not a suable entity. *Sow v.*

4

*Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011). A municipality can only be held liable under § 1983 if "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978). The law recognizes three paths to municipal liability for the deprivation of a person's constitutional rights: (1) an express policy, (2) a widespread custom, or (3) a deliberate act of a decisionmaker with final policymaking authority. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Ms. Treadwell didn't respond to the WPD's motion to dismiss; thus, she does not address the issue of whether the WPD is a suable entity. Further, to the extent that she asserts a claim for relief under § 1983, she doesn't plead any facts to show that an official policy or widespread custom of the WPD caused her constitutional violations. The court concludes that the WPD is not a suable entity and dismisses the claims against it.

Ms. Treadwell asserts that her complaint is also against the State of Indiana. Nothing shows that she has served the State of Indiana or made it a defendant. To the extent that her complaint seeks relief under § 1983, the State of Indiana (even if she were to try to add it as a defendant) would be an improper defendant, as States are not considered "persons" under § 1983 and thus cannot be sued for damages under this statute. *Alden v. Maine*, 527 U.S. 706, 712 (1999).

Finally, Ms. Treadwell's complaint appears to seek relief on behalf of her son. Although she does not state her son's age in her complaint, regardless of whether her son is a minor or an adult, she may not bring a case on behalf of her son in this circumstance. *Elustra v. Mineo*, 595 F.3d 699, 704-05 (7th Cir. 2010) (holding that representative parties such as next of friends may not conduct litigation *pro se* and, specifically, a *pro se* non-attorney parent ordinarily cannot bring a case on behalf of a minor child without being represented by counsel).

5

"Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss," *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015) (emphasis in original), particularly when the plaintiff is proceeding *pro se*, *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024–25 (7th Cir. 2013). The general rule of approaching pleadings with liberality paired with a *pro se* plaintiff warrants leave to amend because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish*, 898 F.3d at 738.

Accordingly, although the complaint does not state a plausible claim against any named defendant, the court will grant Ms. Treadwell an opportunity to file an amended complaint. However, Ms. Treadwell should only file an amended complaint if, after reviewing this order, she believes she can state a plausible constitutional claim—and consistent with this order.

Ms. Treadwell must remember that "[o]nly persons who cause or participate in the violations are responsible" under § 1983. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). More particularly, there is no general *respondeat superior* liability under § 1983—the idea that a principal or person can be responsible for what someone else did. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596.

In addition, she cannot plead unrelated claims against different defendants in the same suit. "Unrelated claims against different defendants belong in different suits." *George*, 507 F.3d at 607.

> A litigant cannot throw all of [her] grievances, against dozens of different parties, into one stewpot. Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions. To be precise: a plaintiff may put in one complaint every claim of any kind against a single defendant, per Rule 18(a), but a complaint may present claim # 1 against Defendant A, and claim # 2 against Defendant B, only if both claims arise "out of the same transaction, occurrence, or series of transactions or occurrences."

6

*Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012); *see also In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012); *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 201 (N.D. Ill. 2013).

In addition, there must be sufficient facts pleaded to allow the court and the defendant to understand the gravamen of her complaint and determine if she is able to state a claim entitling her to relief. *Doherty v. City of Chi.*, 75 F.3d 318, 326 (7th Cir. 1996). The court suggests use of its complaint form should she decide to amend her complaint. This amended complaint, if any, must be self-contained—in other words, it must state all her allegations without reference to other pleadings or motions to amend.

B. *Other Filings.*

To date, Ms. Treadwell has filed five motions for grievance settlements [15, 19, 38-39, 44]. Although the procedural bases for these motions and at times the relief sought is unclear, she appears to ask the court to dismiss pending and resolved state cases against her and award her money for instances of discrimination, harassment, defamation, and false imprisonment at times outside the scope of the complaint and alleged against parties not named in the suit. To the extent Ms. Treadwell seeks relief for claims related to this case in the form of settlement, the court is unable to unilaterally grant a settlement request that has not been mutually agreed upon by all parties. *See Janky v. Batistatos*, 559 F. Supp. 2d 923, 929 (N.D. Ind. 2008). The court also declines to intervene in ongoing state court proceedings in this manner. *See Younger v. Harris*, 401 U.S. 37, 42 (1971).

Finally, of note, Ms. Treadwell mentions an attorney who she expects to represent her. No attorney has appeared in this case on her behalf. To the extent Ms. Treadwell seeks relief, these motions are denied.

Ms. Treadwell has made several filings in this case related to state proceedings. She wrote to this court asking why a state court case, 71D02-2403-F5-000126, was decided despite her not being

7

found guilty. This request pertains to a state proceeding over which this court has no control. To the extent Ms. Treadwell seeks relief from this court, that request is denied. She must direct her inquiries to the state court.

Ms. Treadwell wrote to this court to add Judge Daniel Chamberlin and a state prosecutor (whose name she cannot remember) to this case because Judge Chamberlin denied her daughter a third hearing on traffic citations. As this request is unrelated to this case, it is denied. Immunity under the law likewise would preclude their addition as defendants.

Ms. Treadwell filed a motion for the case to remain open and a trial by jury hearing in 90 days and a subsequent motion requesting a trial by jury within 90 days. Both procedural requests are premature. Any necessary trial-associated matters will be set in accordance with normal procedure near the end of discovery, and assuming any plausible claim has first been asserted.

Ms. Treadwell moves this court to pull certain interrogation room footage pertaining to the February 6, 2024 events and body camera and dashcam footage related to her son's arrest. Further, in a letter and motions, she requests that the court examine certain pieces of evidence that in part are unrelated to her complaint. Finally, Ms. Treadwell filed a motion that states: "I am requesting my Illinois driver's license be returned to me in the sealed packaging it was given to you in." Evidentiary requests pertaining to events at issue here would be the subject of discovery, not activities of the court. *See Jackson v. Curry*, 888 F.3d 259, 265 (7th Cir. 2018).

Ms. Treadwell filed two motions requesting that the court ask the WPD's attorney why the attorney has only emailed and mailed Ms. Treadwell one time and also for the court to show the WPD's attorney that the WPD is failing to investigate other matters. First, it would be improper for the court to communicate with the WPD's attorney in this manner, though the attorney has received her filings already without the court's intervention. Second, the court does not have the authority to initiate investigations for her. These motions are denied accordingly.

Last, Ms. Treadwell requests an "immediate extension and new judge" in a pending state case. The court declines to interfere with this ongoing state criminal proceeding. *See Younger*, 401 U.S. at 42. She must make any such request to the state court.

## CONCLUSION

Accordingly, the court GRANTS the motion to dismiss under Rule 12(b)(6) [12], GRANTS Ms. Treadwell until October 18, 2024 to file an amended complaint, and DENIES the relief sought in other filings [15, 18-19, 21, 26, 28-31, 34-35, 38-39, 44, 48, 49]. The court CAUTIONS Ms. Treadwell that the failure to file a timely amended complaint will result in the dismissal of this case without further notice because her current pleading does not state a claim on which relief can be granted.

SO ORDERED.

October 1, 2024                                            *s/ Damon R. Leichty*
                                                           Judge, United States District Court

9